[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 378 
Deborah Penney and James F. Penney were divorced by a judgment of the Morgan County Circuit Court on February 27, 1998. The wife was awarded custody of the parties' minor daughter and the husband was ordered, among other things, to pay $327 per month in child support.
On March 3, 1999, the mother petitioned for postminority support for the parties' minor daughter. The daughter reached the age of majority on June 30, 1999. The father appeals from a judgment ordering him to contribute $250 per month toward the daughter's college education.
This court's standard of review is the ore tenus standard:
 "`[U]nder the ore tenus standard of review, the trial court's findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong.'"
Bishop v. Pierce, 726 So.2d 663, 664 (Ala.Civ.App. 1998) (quoting Exparte Pielach, 681 So.2d 154 (Ala. 1996)).
In Alabama, the general rule is that a trial court has no jurisdiction to require a parent to provide support for a child who has reached the age of majority. See Beavers v. Beavers, 717 So.2d 373 (Ala.Civ.App. 1997); Whitten v. Whitten, 592 So.2d 183 (Ala. 1991). However, there are exceptions to the general rule. The first exception is where the noncustodial parent has agreed to provide support for the child past the age of majority. Beavers, supra (citing Andrews v. Andrews, 437 So.2d 1306
(Ala.Civ.App. 1983)). Another exception is that a parent may be required to provide postminority support where the adult child is so mentally or physically disabled that he cannot support himself or herself. Beavers, supra, (citing Ex parte Brewington, 445 So.2d 294 (Ala. 1983)). Last, a parent may be required to provide postminority support when application for postminority educational support is made before the child reaches the age of majority. Beavers, supra, (citing Ex parte Bayliss, 550 So.2d 986
(Ala. 1989)).
The Supreme Court of Alabama set out certain factors for the trial court to consider when ruling on a petition for postminority support.See Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). Bayliss clearly specifies those factors that shall, and those that may, be considered by the trial court when it is deciding whether to order support for postminority college education. In an award of postminority educational support for a child of divorced parents, the trial court "`shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education.'" A.L. v. B.W., 735 So.2d 1237, 1239 (Ala.Civ.App. 1999);Thompson v. Thompson, 689 So.2d 885, 887 (Ala.Civ.App. 1997) (quoting Exparte Bayliss, 550 So.2d 986, 987 (Ala. 1989)). *Page 379 
The court suggested that trial courts also should consider "the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance." Id. at 987. The trial court must also determine if the noncustodial parent has "sufficient estate, earning capacity, or income to provide financial assistance without undue hardship." Thrasher v.Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990). Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college. Id.
Following Bayliss, this court has held that the trial court must set reasonable limitations on the parent's responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent. See Manring v. Manring, 744 So.2d 919,922 (Ala.Civ.App. 1999); Hocutt v. Hocutt, 591 So.2d 881, 882
(Ala.Civ.App. 1991); Kent v. Kent, 587 So.2d 409, 412 (Ala.Civ.App. 1991). These limitations include (1) limiting the support to a reasonable period, (2) requiring the child to maintain at least a "C" average, and (3) requiring that the child be enrolled as a full-time student. Manring v. Manring, 744 So.2d 919, 922 (Ala.Civ.App. 1999);Ullrich v. Ullrich, 736 So.2d 639, 643 (Ala.Civ.App. 1999) (quoting Bahriv. Bahri, 678 So.2d 1179, 1181 (Ala.Civ.App. 1996)).
This court has further held that without legal evidence as to the amounts required for books and tuition or for actual costs of room and board, we cannot determine whether the sums a parent is required to pay for postminority educational support would cause him undue hardship.Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990). Furthermore, when the judgment of the trial court has the potential to allow the child to prolong his undergraduate studies well beyond four years, by not requiring the child to take a minimum number of courses each session and by not limiting the number of courses that the child can withdraw from each semester, it will not be upheld. Kent v. Kent,587 So.2d 409 (Ala.Civ.App. 1991); Hill v. Hill, 739 So.2d 501
(Ala.Civ.App. 1999). This court has also held that a reasonable limitation would include limiting the expenses to be paid by a parent to a particular college or institution. Baggett v. Foster, 622 So.2d 350
(Ala.Civ.App. 1992); Eastis v. Bredehoft, 599 So.2d 53 (Ala.Civ.App. 1992).
Moreover, this court has repeatedly stated that the existence of a strained relationship between a parent and his or her child does not prevent the child from having the opportunity to obtain a college education. See Payne v. Williams, 678 So.2d 1118 (Ala.Civ.App. 1996);Newman v. Newman, 667 So.2d 1362 (Ala.Civ.App. 1994); Quillin v.Quillin, 652 So.2d 294 (Ala.Civ.App. 1994); Heath v. Heath, 647 So.2d 769
(Ala.Civ.App. 1994); Anonymous v. Anonymous, 646 So.2d 28 (Ala.Civ.App. 1993); Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App. 1990).
It is undisputed in this case that the application for postminority educational support was made before the child reached the age of majority.
At the time of the hearing, the daughter attended Northwest Shoals Community College in Florence, and she was planning to complete the requirements for her associate's degree in business in the summer of 2000. While at Northwest Shoals, the daughter played volleyball on a scholarship that covered tuition, fees, and the cost of books, and she had been awarded a "Pell Grant" in the amount of $200 per quarter. She wished to continue her education at a *Page 380 
four-year university. The mother and the daughter testified that they were actively seeking volleyball scholarships at four-year institutions; however, the daughter had not determined which institution she was going to attend. She had visited Faulkner University in Montgomery and Cumberland University near Nashville, Tennessee, and she had sent videotapes of some of her volleyball games to the University of Alabama at Huntsville. The daughter's grades are good, and there is no dispute that she has a commitment to, and the aptitude for, a college education.
Both the mother and the daughter testified that the daughter has worked part-time when her schedule permitted, to earn money to pay her college expenses. She worked one summer at an O'Charley's restaurant to earn money for school, and she was planning to begin working at an O'Charley's restaurant in Florence a month after the postminority hearing was held. The daughter testified that when her schedule allows she also babysits to earn money.
The mother testified that she is employed with the Morgan County Commission as an accounts payable officer, earning a yearly gross income of $26,000. The mother testified that she has incurred average monthly expenses of $830.35, while the daughter has attended Northwest Shoals; she explained that a large portion of that amount represents expenses for transportation to and from school.
The father testified that he is employed with 3M Corporation, in production, earning a yearly gross income of $42,000. In 1999, he earned approximately $51,000, including his overtime pay. He testified that he would have done what he could to help his daughter with her college education if he were still married to her mother; however, he testified that he believes that he should not be ordered to pay postminority support. He testified that he will do what he can to help his daughter with her college expenses if she will discuss her college plans with him, seek his advice, and attend a four-year institution in the Decatur vicinity. At the time of the proceedings, the father was 50 years of age; he testified that he planned to retire at age 55. He testified that he had had to start over after the divorce and that he has numerous expenses resulting from his starting over. He further testified that he had paid for half of his daughter's rent the previous fall, when she asked for his assistance, and that he provides her medical insurance through his employer. Likewise, he testified that he had bought his daughter a 1994 Pontiac Sunbird automobile, but that the mother had wrecked it; the mother testified that she wrecked the car in an accident and had to buy her daughter another car.
The daughter testified that she lived in a dormitory while attending Northwest Shoals. She further testified that she will likely get a scholarship at UAH or Cumberland to play volleyball. She testified that she declined Faulkner University's scholarship offer because the offer covered only $6,000 of tuition, and tuition at Faulkner for one year is $12,000. She testified that she has not considered whether she would live at home if she attended UAH. She further testified that she did not consult with her father or mother about what classes to take or what degree to pursue, but that she did tell them about her courses and her tests each semester.
After the testimony was concluded at the postminority-support hearing, the trial court entered a judgment that provided in pertinent part:
 "1. The petition for an Order requiring the parties to pay the education expenses for [the daughter] to attend college *Page 381 
and complete her college education is denied.
 "2. Each party shall provide [the daughter] with post-minority support in the amount of $250.00 monthly so long as she is enrolled as a full-time student in a college or university, maintains not less than a `C' cumulative grade point average, remains single and has not reached 24 years old. Each party is to pay this amount directly to [the daughter] on or before the first day of each month beginning April 1, 2000. At the request of either the plaintiff or defendant, [the daughter] shall promptly provide documented proof that she is in compliance with the conditions necessary for her to receive post-minority support.
 "3. Any relief that is requested by either party, which is not expressly granted above, is denied. . . ."
In paragraph 1, the trial court denied the mother's petition for postminority support, however, in the second paragraph, the trial court appears to award a monthly amount pursuant to Ex parte Bayliss. We conclude that the trial court's judgment is ambiguous because it purports to deny postminority support in one paragraph and purports to award it in another. We therefore remand the case to the trial court with instructions to clarify its judgment pertaining to postminority support.
In applying Bayliss, the trial judge stated that "there is a list of criteria that have to be proven . . . before parents may be ordered by a court to pay the expenses of a college education." The court found that the amount of expenses expected to be incurred for tuition, books, fees, room, and board had not been established. The court further found that there was no evidence that the child had consulted her parents about where to attend college, what curriculum to pursue, or the expenses to be incurred.
We conclude that the trial court correctly stated and applied the law that the amount of expenses expected to be incurred must be presented for the court to award postminority support. However, we conclude that the trial court erroneously applied Bayliss when it treated the daughter's failure to consult her parents about her choice of college, classes, and living arrangement as a factor that also must be considered by the trial court before awarding postminority support. Bayliss provides that a child's relationship with her parents is a factor that may be considered before awarding postminority support. Bayliss, supra.
The record indicates that evidence regarding the financial resources and debts of the father and the mother was presented, and this evidence indicates that the father has the ability to pay postminority support. However, the trial court heard no evidence concerning the expenses the child would incur in furthering her education at a four-year institution, except that she was pursuing volleyball scholarships to cover some of the costs. In Thrasher, this court held that it was reversible error for the trial court to fail to take "evidence on the reasonable necessaries, including room and board, for the child to attend college after reaching majority." Thrasher at 841. We therefore conclude that the trial court erred in failing to take such evidence in this case and to make findings to determine the expenditures, including expenditures for tuition, fees, room, and board, that will be necessary for the daughter to attend college.
Furthermore, we hold that the trial court failed to place sufficient restrictions on the number of college years or courses for which the father and mother *Page 382 
would be responsible. See Kent v. Kent, 587 So.2d 409 (Ala.Civ.App. 1991); Hill v. Hill, 739 So.2d 501 (Ala.Civ.App. 1999). Under the facts of this case, the daughter was to complete the requirements for her associate's degree during the summer of 2000. Therefore, assuming that she takes a full course load, she will need two more years of postsecondary education to complete the requirements for her bachelor's degree. In light of this evidence, the trial court erred by providing that each parent was to contribute to the daughter's education until she reached the age of 24.
We therefore reverse the trial court's order and remand the case for the trial court to clarify its order pertaining to postminority support.See Baggett v. Foster, 622 So.2d 350 (Ala.Civ.App. 1992). Upon remand, the trial court is directed to take such further evidence as it deems necessary and to make a determination of the expenditures, including expenditures for tuition, fees, room, and board, that will be necessary for the child to attend college, and a determination of whether these expenditures will result in an "undue hardship" to the father. In addition, the trial court should impose reasonable time limitations on the postminority-support award, because the daughter has completed two years of postsecondary study. The mother's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Monroe and Crawley, JJ., concur.
Robertson, P.J., and Yates, J., concur in the result.