883 So.2d 223 (2003)
Freida Patterson LINDSEY
v.
Lloyd Michael PATTERSON.
2020008.
Court of Civil Appeals of Alabama.
December 12, 2003.
*224 Wanda J. Batson, Sylacauga, for appellant.
Dianne James Davis, Alexander City, for appellee.
MURDOCK, Judge.
Freida Patterson Lindsey, the mother, appeals from a judgment of the Clay Circuit Court requiring her to pay $2,000 per semester as postminority educational support for her son, Jeremy Patterson.
The mother and Lloyd Michael Patterson, the father, were divorced by a judgment entered by the Clay Circuit Court in 1992. Pursuant to the divorce judgment, the father was awarded custody of the parties' three children, including the parties' oldest son, Jeremy. In November 2001, the trial court entered an order requiring the mother to pay 50% of Jeremy's college expenses "after all scholarships, grants, financial assistance, aid and benefits have been applied for and exhausted."[1] At that time, Jeremy resided with the father and was attending Southern Union Junior College on a scholarship. His only unpaid college expenses were the costs for books and certain fees. The mother's payments for Jeremy's postminority educational support at Southern Union totaled approximately $120 per semester.
In April 2002, the mother filed a petition to modify her postminority-educational-support obligation. The mother alleged that at the time the trial court entered its November 2001 order the parties had expected Jeremy to attend Jacksonville State University after he completed his studies at Southern Union. She alleged that Jeremy had subsequently decided to attend the University of Alabama. In her petition, the mother alleged that the costs for tuition, books, and room and board at the University of Alabama were considerably more than the same costs for Jeremy to attend Jacksonville State University or the University of Alabama at Birmingham. She also alleged that if Jeremy attended the University of Alabama at Birmingham he could live with her and the parties could save the costs associated with room and board. Further, she alleged that even if Jeremy attended the University of Alabama he could live with her brother, who resided approximately 20 miles from campus, and the parties could thereby substantially reduce the costs of room and board.
The mother alleged that she did not have sufficient funds to pay 50% of Jeremy's postminority educational expenses if he attended the University of Alabama. She requested that the trial court either reduce or eliminate her obligation to pay postminority educational support for Jeremy if he attended the University of Alabama, require Jeremy to live with her brother if Jeremy attended the University of Alabama, require Jeremy to attend Jacksonville State University, or require Jeremy to live with her and attend the University of Alabama at Birmingham.
The father filed an answer denying most of the substantive allegations contained in the mother's petition. He also filed a petition requesting that the mother's summer visitation with the parties' other two children be modified, but not reduced, so that *225 those children could participate in summer sporting activities.
The trial court held a hearing on the parties' petitions in June 2002. The only evidence presented at trial was the testimony of the mother and documentary evidence that she introduced in support of her petition. At trial, the mother admitted that Jeremy would complete two years of study at Southern Union in the summer of 2002, that Jeremy had not applied to any school other than the University of Alabama, that he had been accepted at the University of Alabama, and that he was scheduled to begin his studies at the University of Alabama in the fall of 2002.
Approximately two months after trial, the trial court entered its judgment, stating, in part:
"Testimony was that the mother has known that she would be required to pay a percentage of [Jeremy's] college expenses for a number of years. At one point, the percentage of the cost was greater than fifty percent (50%). The mother has failed to save for the minor child's college expenses. In fact, the mother has purchased a residence, an automobile, along with contributing to her 401k plan. The last hearing on this matter was November 5, 2001 and there was no limitation as to where the child would live or what school the child would attend. The University of Alabama is the only college that the child . . . has applied and been accepted and the court finds that the costs for living and college expenses would be approximately $4,000 per semester."
The trial court ordered "[t]hat the mother... pay $2,000 per semester beginning August 1, 2002 and will continue thereafter no later than the 1st day of the month of which each semester is to begin." The trial court denied the father's request to modify the mother's summer visitation with the other children. The mother appeals.
The mother makes several arguments as to why she believes the trial court erred by ordering her to pay $2,000 per semester for Jeremy's college expenses. However, only two of the mother's arguments merit discussion  that the trial court's award would cause her undue financial hardship and that the trial court failed to set reasonable limitations on her responsibility for Jeremy's postminority educational support.
When a trial court receives evidence ore tenus, as it did in this case, its judgment is presumed to be correct and will not be disturbed on appeal unless it is unsupported by the evidence so as to be plainly and palpably wrong. Bishop v. Pierce, 726 So.2d 663, 664 (Ala.Civ.App. 1998). Also, the modification of a child-support order rests soundly within the trial court's discretion and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence and, thus, is plainly and palpably wrong. Berryhill v. Reeves, 705 So.2d 505 (Ala.Civ. App.1997).
This court has stated that a trial court, in reaching its decision as to postminority educational support, "`shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education.'" Thompson v. Thompson, 689 So.2d 885, 887 (Ala.Civ.App.1997) (quoting Ex parte Bayliss, 550 So.2d 986, 987 (Ala. 1989)).
"A parent has a legal duty to provide or aid in providing a college education for his/her child if the child demonstrates the ability and willingness to attain a higher education and the parent has sufficient *226 estate, earning capacity, or income to provide financial assistance without undue hardship to himself."
Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990); see also Fielding v. Fielding, 843 So.2d 766, 769 (Ala.Civ.App. 2002).
The mother argues that the trial court's order requiring her to pay $2,000 per semester as postminority educational support imposes an undue financial hardship on her. The mother testified that she had not had sufficient income to save for Jeremy's postminority education. However, the mother had managed to "recently" begin making contributions to her 401k retirement account, which contained approximately $19,000. Further, in November 2001, when the trial court first modified the mother's postminority-educational-support obligation, Jeremy had attained the age of majority, and, in its November 2001 order, the trial court reduced the mother's child-support obligation from $800 per month, which she had been paying for several years, to $526 per month. There was no evidence that the mother had been unable to afford the $800 per month child-support obligation.
The mother also testified that she only had $145 per week in disposable income after the deduction of certain living expenses and legal obligations. She testified that, at the time of trial, she could not pay more than $120 per month for Jeremy's postminority education. However, based on the above-described evidence and other evidence presented by the mother, the trial court could have concluded that any difficulty the mother might have in contributing financially to Jeremy's postminority education would not be as great as the mother testified.[2] Based on the record presented, we cannot conclude that the trial court's judgment was plainly and palpably wrong insofar as it requires the mother to pay $2,000 per semester as postminority educational support.
The mother also argues that the trial court erred because it did not set reasonable limitations on her obligation to pay postminority educational support. This court has held "that the trial court must set reasonable limitations on the parent's responsibility for postminority educational support, because the failure to do so may impose an undue hardship on the paying parent." Hertzberg v. Gainey, 855 So.2d 561, 564 (Ala.Civ.App.2003); see, e.g., Penney v. Penney, 785 So.2d 376 (Ala.Civ. App.2000); and Kent v. Kent, 587 So.2d 409 (Ala.Civ.App.1991) (reversing the judgment and remanding the case for the trial court to set a reasonable time limitation on the obligation to pay postminority educational support, to require that the child maintain at least a "C" average, and to require that the child be enrolled as a full-time student). In this case, the trial court failed to incorporate any temporal and academic restrictions in its award of postminority educational support.
The judgment of the trial court is affirmed insofar as it orders the mother to pay $2,000 per semester for postminority educational support. However, the judgment *227 is reversed insofar as it fails to incorporate reasonable temporal or academic restrictions in its award of postminority educational support, and the cause is remanded for the trial court to incorporate such restrictions in its judgment.
The mother's request for the award of an attorney fee on appeal is granted in the amount of $750.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., concurs in part and dissents in part, with writing.
CRAWLEY, Judge, concurring in part and dissenting in part.
I concur with the main opinion on the issue of incorporating limitations on the mother's responsibility for payment of college expenses.
I dissent from the main opinion on the issue of the mother's postminority-educational-support obligation. The trial court should give the mother credit for the cost of room and board while the child attends the University of Alabama. The trial court's 1999 order regarding postminority educational support stated that room and board would not be considered as an expense if the child resided with either parent. There was no evidence that the mother's offer to allow the child to live with her and to attend the University of Alabama at Birmingham was unreasonable.
NOTES
[1] The November 2001 order modified an earlier order of the trial court that had required the mother to pay 56% of Jeremy's postminority educational expenses.
[2] The mother submitted evidence that the estimated costs for Jeremy to attend the University of Alabama were $4,251 per semester, including tuition and room and board. In her petition, the mother requested that the trial court reduce or eliminate her postminority-educational-support obligation if Jeremy attended the University of Alabama. She had no objection, however, to his attending Jacksonville State University (she actually requested that the trial court order Jeremy to attend Jacksonville State University), where his educational expenses would have been approximately $2,795 per semester. The mother's support obligation if Jeremy had attended Jacksonville State University would have been approximately $1,397.50 ($2,795 ÷ 2) per semester.